## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| **JOSEPH DENHAM** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **19-794** |
| | : | |
| **v.** | : | |
| | : | |
| **THE CHILDREN'S HOPSITAL OF** | : | |
| **PHILADELPHIA;** *ET AL.* | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

**CONSOLE MATTIACCI LAW, LLC**

Lane J. Schiff, Esquire
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
Telephone:  (215) 545-7676
Facsimile:  (215) 565-2850
schiff@consolelaw.com

*Attorneys for Plaintiff*

Dated: May 20, 2020

## I.      INTRODUCTION

Joseph Denham ("Plaintiff" or "Dr. Denham") has brought this this action against his employers, The Children's Hospital of Philadelphia ("CHOP"), Children's Anesthesiology Associates ("CAA"), and the Trustees of the University of Pennsylvania ("Penn") (collectively "Defendants"), for unlawful disability and age discrimination, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq.,* ("ADA"), Age Discrimination in Employment Act, as amended, 29 U.S.C. §621, *et seq.* ("ADEA"), Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"); and Philadelphia Fair Practices Ordinance, as amended, Phila. Code §9-1101, *et seq.* ("PFPO").

Dr. Denham has dedicated his life to helping sick children.  He was employed as Pediatric Anesthesiologist for nearly twenty (20) years, working primarily with pediatric oncology patients. He was a well-respected Physician.  He served as the Medical Director at the Perelman Center for Advanced Medicine and was additionally an Assistant Professor of Clinical Anesthesiology and Critical Care at the University of Pennsylvania - Perelman School of Medicine.

Dr. Denham also has several medical conditions related to his neck, shoulder, and arm, including cervical disc disease, cervical radiculopathy, chronic myofascial pain, and brachial plexopathy.  Unfortunately for Dr. Denham, his employers do not practice what they preached. A hospital that takes pride in how it treats its sick and vulnerable patients treated Dr. Denham, a then sixty-four (64) year old disabled individual, horrendously. Defendants subjected him to invidious disability and age discrimination.  When Plaintiff did not acquiesce to this discriminatory treatment, Defendants threatened to terminate his employment.  The

discrimination to which Defendants subjected Dr. Denham exacerbated his medication conditions and caused him to take a medical leave of absence on which he remains.

Defendants nevertheless asks this Court to conclude that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law. Defendants make this request notwithstanding the fact that:

- Defendants **admit** that Plaintiff's reduced schedule was a reasonable accommodation for his disability;

- Defendants **admit** that they were subjecting Plaintiff to adverse employment actions, including loss of salary, bonus, benefits, paid vacation, professional expense account, a faculty position, and a leadership role;

- Defendants **admit** that they were ceasing to accommodate Plaintiff's disability, despite having no legal justification for the same; and

- Defendants **admit** that the invidious discriminatory comments to which they subjected Plaintiff violated Defendants' Non-Discrimination, Harassment and Retaliation Policy, the very policy designed to protect employees from unlawful harassment.

As such, for the reasons discussed more fully herein, Defendants' Motion for Summary Judgment should be denied.

## II.   STATEMENT OF FACTS

Plaintiff has filed, contemporaneous with this Memorandum of Law, a separate Statement of Disputed Facts and Facts Favorable to Plaintiff Precluding Entry of Summary Judgment ("SOF"). The SOF contains citations to the record, which are attached as Exhibits. Plaintiff incorporates the SOF as if set forth fully herein.

## III.   LEGAL STANDARD

Summary judgment is to be used sparingly in employment discrimination cases. *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008). It may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The employer retains the burden of

persuading the Court that, "even if all of the inferences which could reasonably be drawn from

the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no

reasonable jury could find in the plaintiff's favor." *C.A.R.S.*, 527 F.3d at 362.

At the summary judgment stage, the role of the trial judge is to determine whether there

is a genuine issue, as "credibility determinations, the weighing of the evidence, and the drawing

of legitimate inferences from the facts are jury functions, not those of a judge." *Leone v. Air

Products & Chemicals, Inc.*, 2008 WL 1944104, *1 (E.D. Pa. 2008) (quoting *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  This standard is to be "applied with added rigor in

employment discrimination cases, where intent and credibility are crucial issues." *Shimell v. De

Lage Landen Financial Services*, 2008 WL 1774129, *1 (E.D.Pa. 2008) (quoting *Stewart v.

Rutgers University*, 120 F.3d 426, 431 (3d Cir. 1997)).

"When the defendant's intent has been called into question, the matter is within the sole

province of the factfinder." *Jalil v. Avdel Corporation*, 873 F.2d 701, 707 (3d Cir. 1988).  As the

Third Circuit has noted, "because intent is a substantive element of the cause of action—

generally to be inferred from the facts and conduct of the parties—the principle is particularly

apt that courts should not draw factual inferences in favor of the moving party and should not

resolve any genuine issues of credibility." *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981).

At the summary judgment stage, "all that is required [for a non-moving party to survive the

motion] is that sufficient evidence supporting the claimed factual dispute be shown to require a

jury or judge to resolve [at trial] the parties' differing versions of the truth." *Oakley v.

Orthopedic Associates of Allentown, Ltd. et al.*, 2010 U.S. Dist. LEXIS 103230, *3 (E.D.

Pa.2010) (quoting *Jackson v. University of Pittsburgh*, 826 F.2d 230, 233 (3d Cir. 1987)).

Defendants cannot prevail on its Motion because there are numerous genuine disputes of material fact; a reasonable jury could infer from the record evidence that Defendants subjected Plaintiff to disability discrimination, a hostile work environment, and failed to provide him with a reasonable accommodation.

## IV.    LEGAL ARGUMENT

Defendants' Motion for Summary Judgment should be denied.  Plaintiff has set forth sufficient evidence from which a reasonable jury could conclude that Defendants discriminated against him based on his disability and age. First, a reasonable jury could conclude that Defendants discriminated against him based on his disability with regards to his compensation, and other terms, conditions, and privileges of his employment.  Second, a reasonable jury could conclude that Defendants subjected him to a hostile work environment because of his disability and age.  Third, a reasonable jury could conclude that Defendants ceased providing Plaintiff a reasonable accommodation.  Fourth, a reasonable jury could conclude that Penn is Plaintiff's employer.  Fifth, a reasonable jury could conclude that Plaintiff is entitled to punitive and liquidated damages.  Therefore, Defendants' Motion for Summary Judgment should be denied.

### A.  Plaintiff Has Set Forth Sufficient Evidence From Which A Reasonable Jury Could Conclude That Defendants Discriminated Against Him Based On His Disability With Regards To His Compensation, And Other Terms, Conditions, And Privileges of Employment

Defendants discriminated against Dr. Denham based on his disability with regards to his compensation, and other terms, conditions, and privileges of his employment.  Plaintiff's claim of disability discrimination is analyzed pursuant to the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1983).  Under this analysis, Plaintiff must first establish a *prima facie* case of discrimination.  *Shaner v. Synthes (USA)*, 204 F.3d 494, 500 (3d Cir. 2000).

4

If the Plaintiff satisfies this burden, then the burden shifts to Defendants to produce a legitimate, nondiscriminatory reason for their actions. *Id.* If the employer is able to meet its burden of establishing a legitimate non-discriminatory reason, then the plaintiff will be able to defeat summary judgment simply by demonstrating evidence from which a jury could conclude that the employer's stated reason is a pretext for discrimination. *Id.* Here, Defendants only challenge whether Plaintiff can establish a *prima facie* case of discrimination.

To establish a *prima facie* case of disability discrimination, "a plaintiff must show (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Shaner*, 204 F.3d at 500 (internal quotations omitted). Importantly, Courts routinely find that there is a **low bar** for establishing a *prima facie* case of employment discrimination. *See Scheidemantle v. Slippery Rock Univ.*, 470 F.3d 535, 539 (3d Cir. 2006); *Ezold v. Wolf Block*, 983 F.2d 509, 523 (3d Cir. 1993) ("Because the prima facie case is easily made out, it is rarely the focus of the ultimate disagreement."). Establishing a *prima facie* case is not an onerous burden and is easily met. *See Corbetto v. Wyeth Pharma.*, 619 F.Supp.2d 142 (W.D. Pa. 2007) (*quoting Sempier v. Johnson & Higgins*, 45 F.2d 724, 728 (3d Cir. 1995); *Neiderlander v. Am. Video Glass Co.*, 80 F. App'x 256, 261 (3d Cir. 2003) (explaining that the burden of establishing a *prima facie* case is "not onerous" and is a "low threshold"). The *prima facie* case should be flexible, tailored to fit the specific context in which it is applied and not squeezed into a one-size-fits-all formula. *Jones v. Sch. Dist. Of Philadelphia*, 198 F.3d 403, 411 (3d Cir. 1999); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir. 1990) ("The framework set forth in *McDonnell Douglas* . . . was never intended to be rigid, mechanized or ritualistic. Rather, it is merely a

sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." (internal citations omitted)).

Here, Defendants only explicitly challenge whether Plaintiff suffered an adverse employment action. [1] The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, **employee compensation**, job training, and **other terms, conditions, and privileges of employmen**t." 42 U.S.C. § 12112(a) (emphasis added). An adverse employment action is one which is "sufficiently severe to have altered the employee's compensation, terms, conditions, or privileges of employment, or to have deprived or tended to deprive him of employment opportunities or otherwise adversely affected his status as an employee." *Howell v. Millersville Univ. of Pa*., 283 F. Supp. 3d 309, 323 (E.D. Pa. 2017) (internal citations omitted); *see also Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001). "The plaintiff does not have to show economic or tangible discrimination, but at the same time, not every insult, slight, or unpleasantness gives rise to a valid claim." *Howell*, 283 F. Supp. 3d at 323 (citation omitted); *See e.g. Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999); *Albright v. City of Phila.*, 399 F. Supp. 2d 575, 590 (E.D. Pa. 2005). Here, Plaintiff suffered numerous adverse employment actions, including loss of salary, incentive pay, benefits, paid vacation, personal expense account, faculty position, and his leadership role.

---

[1] In a footnote, Defendants "[c]hallenge whether Plaintiff is 'otherwise qualified' under the ADA. (Defs.' Mem. Of Law at FN 5). Defendants have explicitly not moved for Summary Judgment on this issue. *See* Defs. Mot for Summ. J. (not listing this as a reason summary judgment should be granted). Nevertheless, Defendants' argument is without merit. A qualified individual "is defined as one who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006) (internal citations omitted). Given that Plaintiff did not commence his medical leave until May 23, 2018, there is no dispute that Plaintiff could perform the essential functions of his job during the course of his employment with Defendants and at the time Defendants subjected him to the adverse actions. (SOF 116). The fact that Defendants invidious discrimination thereafter caused him to take a medical leave of absence has no bearing on whether he is a qualified employee. Otherwise, Defendants would be rewarded for their unlawful behavior.

1.  **Prior to the implementation of the Employment Models, Plaintiff enjoyed certain compensation, terms, conditions, and privileges of employment**

Plaintiffs suffers from numerous medical conditions, including cervical disc disease, cervical radiculopathy, chronic myofascial pain, and brachial plexopathy. (SOF 25) These conditions cause him severe and intense pain in his neck, shoulder, and through his arm and hand.  (SOF 26) As a reasonable accommodation for the same, Plaintiff worked a reduced schedule of three days per week and no call.  (SOF 27, 35) Prior to the January of 2018, Plaintiff enjoyed a compensation and other terms, conditions, and privileges to his employment, including, without limitation:

- receiving an annual salary of $192,540 (SOF 14);

- receiving incentive pay consistently in Excess of $20,000.  In 2013, Plaintiff received a bonus of $35,000. In 2014, Plaintiff received a bonus of $46,000.  In 2015, Plaintiff received a bonus of $39,400. In 2016, Plaintiff received a bonus of $30,000. In 2017, Plaintiff received a bonus of $23,240.  In 2018, Plaintiff would have received a bonus of approximately $24,000 (SOF 15-16);

- receiving nineteen (19) vacation days, valued at $28,500 (SOF 19);

- receiving health insurance benefits from Penn (SOF 17);

- receiving 403(b) contributions of nine percent (9%) annually, which amounted to $19,232.10 in 2017 (SOF 18);

- receiving a professional Expense Account in the amount of $3,000 (SOF 50-51);

- Holding the leadership position of Medical Director at CAM.  As Medical Director, Plaintiff had numerous responsibilities in addition to those of a treating physician. Among other things, he was responsible for developing the safety process for pediatric anesthesia at CAM and establishing periodic meetings among staff to optimize pediatric medical safety care. He lectured Hospital of University Pennsylvania medical and therapist staff, provided training skills for medical and therapist staff, and provided daily instruction for medical staff.  Dr. Denham participated in family clinical meetings with Radiation Oncologist to optimize anesthesia plans for radiation treatment.  Dr. Denham additionally handled personnel issues and had approximately three (3) to four (4) physicians who also worked at CAM who reported into him (SOF 8-11); and

- holding the title of Assistant Professor of Clinical Anesthesiology and Critical Care. In that role, Dr. Denham was considered a faculty member of an internationally prestigious university.  Among other things, he lectured medical students, residents, and fellows.  He was also invited to lecture nationally and locally, including in Las Vegas and Philadelphia.  Dr. Denham developed discussion topics for visiting professors on General Anesthesia Proton treatments, including those from Michigan, China, and England. Dr. Denham also advised developing proton centers on designing safe anesthesia models. (SOF 12-13).

## 2.  Defendants implement the Employment Models and subject Plaintiff to adverse employment actions

In January 2018, Defendants implemented the Employment Models in the Division of General Anesthesia ("the Models"). (SOF 76-77). Employees needed to choose their employment model out of four (4) options: (1) Full Time, (2) Contractual, (3) Contractual: Path to Retirement; and (4) Part Time Limited. (SOF 78). Critically, because of Plaintiff's disability, he was forced to enter the Part Time Limited Model.  (SOF 35, 81-87).  That is because each other model required Plaintiff to work call shifts, which Plaintiff was medically unable to do (full time and contractual also required its employees to work at minimum four (4) days per week, which Plaintiff was also medically unable to do).  (SOF 35, 79-81)

Critically, under Part-Time Limited Model, Plaintiff suffered consequences to nearly all the compensation, benefits and privileges he enjoyed prior to the implementation of the Models:

| Compensation, Term, Condition, Privilege | Before implementation of the Models | After implementation of the Models |
|---|---|---|
| **Salary:** | $192,540 | No guaranteed salary |
| **Bonus:** | $24,000 | $0 |
| **Vacation Days:** | Nineteen (19) vacation days valued at $28,500 | Zero vacation days, valued at $0 |
| **Health Insurance:** | Health Insurance through Penn | No Health Insurance Through Penn |
| **403(b) Contribution:** | Nine (9) percent annually, amounting to $19,232.10 | Zero contribution, amounting to $0 annually |
| **Professional Expense Account:** | $3,000 annually | No Professional Expense Account |
| **Leadership Title:** | Medical Director at CAM | No Medical Director Title |

8

| Faculty Appointment | Assistant Professor of Clinical Anesthesiology and Critical Care | No Faculty Appointment |

(SOF 8-19, 50-51, 88-97).  As such, Defendants discriminated against Plaintiff with regards to his compensation, and other terms, conditions, and privileges of employment, such that he suffered an adverse employment action.

Defendants' nevertheless contend that "Plaintiff's adverse employment argument is based entirely on his subjective belief that he would have been forced into an employment model he did not like" and that "fear of an adverse action and subjective belief that he would have suffered an adverse action is insufficient to establish an actual adverse employment action." (Defs.' Mem at p. 8). However, Defendants' argument is without merit and ignores the record evidence.

Plaintiff did not have a subjective belief or fear that he would suffer an adverse action. Rather, **Defendants expressly told him that he was going to suffer an adverse action because of his disability.**  On January 30, 2018, Plaintiff received the Models, which plainly stated that if you could not work call, then you would need to enter the Part Time Limited Model. (SOF 76, 80). This was confirmed in a phone call with Dr. Kurth on April 19, 2018, wherein he, consistent with the language of the Models, **told Plaintiff that he was going to have enter the Part Time Limited Model because of his medical restriction.** (SOF 98-102) Removing any ambiguity, the following day, Dr. Kurth confirmed this in writing. In response to Plaintiff explicitly reiterating that he was working a reduced schedule as an accommodation for his medical conditions, Dr. Kurth responded, "**the part time limited model… fit your work the best.**" (SOF 104-106). In responding in such a manner, Dr. Kurth undoubtedly informed Dr. Denham that he would be entering the Part Time Limited Model. (SOF 108)

Plaintiff's adverse action is further substantiated by the testimony of each of the four individuals involved in the implementation of the Models – Dr. Kurth, Dr. Bailey, Ms. Kraft, and Ms. Otarola – each of whom **admit** that Plaintiff was going to have to work in the Part Time Limited Model because of his disability:

| Dr. Bailey | **Q.** Do you agree that under the policy assuming that you don't want to retire, if you have a disability and an accommodation that requires you to work less than four days per week, then your employment status must become part-time limited? [objection] **A.** So based on those, the models that are available, yes, you would fall into part-time limited. |
|---|---|
| Dr. Bailey | **Q.** So the only model that Dr. Denham could have continued working in is the part-time limited model; correct? **A.** Yes. |
| Dr. Kurth | **Q.** So going back to my question, if you're unable to work any type of call, late, first, or second, you would agree that the only employment option for you is part-time limited? **A.** Yes. |
| Dr. Kurth | **Q.** So do you agree that under the policy, the employment models, if your reasonable accommodation is a reduced schedule of less than four days and no call period, the only employment option you can have is part-time limited? **A.** Yes. |
| Ms. Kraft | **Q.** Do you agree that if you have a disability that prevents you from working on call that the only employment model that you can work in is part-time limited? **A.** Given that a first and second call requirement is required in the other models, I would say that's a true statement. |
| Ms. Otarola | **Q.** You would agree that every model except for part-time limited requires call? **A.** Yes. … **Q.** If you were unable to [work call] for whatever reason, part-time limited is the only model that you can work; correct? [objection] **A.** Yes. |

(SOF 82-87)

Therefore, Plaintiff is not basing his claim on any subjective belief, but rather by what was explicitly confirmed by Defendants: Plaintiff's only employment option was Part Time Limited. Notice of an adverse action, regardless of whether it has taken effect, is still an adverse action. *See Lebofsky v. City of Phila.*, 394 F. App'x 935, 938 (3d Cir. 2010) (recognizing that a cause of action begins upon *"notification to the employee of such an action"*); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 852-53 (3d Cir. 2000) ("[A]n adverse employment action occurs…at the time the employee receives notice of that action and termination is a delayed but

10

inevitable result").[2]  As such, a jury could conclude that Plaintiff was subjected to an adverse

action and thus Defendants' Motion for Summary Judgment should be denied.

**B.  Plaintiff Has Set Forth Sufficient Evidence From Which A Reasonable Jury
Could Conclude That Defendants Subjected Plaintiff To A Hostile Work
Environment**

To succeed in a claim for hostile work environment, a plaintiff must establish that he: (1)

suffered intentional discrimination because of a protected trait; (2) the discrimination was severe

or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination

detrimentally affected a reasonable person in like circumstances; and (5) the existence of

respondeat superior liability.  *See Castleberry v. STI Grp.*, 2017 U.S. App. LEXIS 12611, at *5

(3d Cir. July 14, 2017). Defendants only challenge the second prong, that Plaintiff was subjected

to severe or pervasive discrimination.

It is well established that evaluation of a hostile work environment claim requires

consideration of the totality of the circumstances; a court must not focus on individual incidents,

but on the overall scenario.  *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir.

1990).  Critically, "[d]etermining whether an employee suffered a sufficiently severe or

pervasive environment to prevail on a hostile work environment claim is generally unsuited for

summary judgment because that determination is 'quintessentially a question of fact.'" *Quick v.

GEO Grp., Inc.*, 2020 U.S. Dist. LEXIS 16872, at 44 (W.D. Pa. Feb. 3, 2020) (citing *Rorrer v.

Cleveland Steel Container*, 712 F. Supp. 2d 422, 429 (E.D. Pa. 2010))

Here, Plaintiff was subjected to severe and pervasive harassment.  Countless facts make

this clear:

- Defendants repeatedly made disparaging comments towards Plaintiff about his medical

---

[2] For the reasons discussed above, Defendants reliance on *Clarkson v. SEPTA*, U.S. Dist. LEXIS 54615 (E.D. Pa. Apr. 25, 2016) and *Nolan v. Swartz Campbell, LLC*, 2008 U.S. Dist. LEXIS 15501 (W.D. Pa. Feb. 29, 2008) is misguided.

conditions in his performance reviews, including "[h]e always seems to be plagued by some illness and this year was no exception," "[h]e had a significant amount of sick time this year," and Plaintiff "is limited to some degree by his health issues that result in prolonged absences from work goals." (SOF 47).

- Upon Plaintiff's **_very first meeting_** with Dr. Kurth, in August 2017, Dr. Kurth threatened Dr. Denham, trying to force him to retire. (SOF 62-67).

- Dr. Kurth's remarked that since Dr. Denham was over the age of sixty (60), he was probably tired. (SOF 66).

- Dr. Kurth remarked that Plaintiff should think about retiring. (SOF 67).

- Dr. Kurth smirked at Dr. Denham when he described his reasons for his medically necessary reduced schedule. (SOF 65).

- Dr. Denham informed Dr. Bailey, his direct supervisor, about these discriminatory comments. However, rather take corrective action as Defendants' Non-Discrimination, Harassment, and Retaliation Policy requires, Dr. Bailey did nothing. (SOF 71-72).

- That is because Dr. Bailey had his own discriminatory bias. On more than ten (10) occasions, Dr. Bailey told Dr. Denham that his body had taken a number of hits. (SOF 56).

- Dr. Bailey additionally told Dr. Denham on numerous occasions that his body was not like it used to be. (SOF 55).

- Defendants reduced Plaintiff's personal expense account amount solely as a result of Plaintiff "extensive disability time," forcing Plaintiff to incur thousands of dollars in out of pocket expenses; (SOF 48-53)

- In April 2018, Dr. Kurth again threatened Plaintiff, trying again to force him to retire. (SOF 103).

- Dr. Kurth remarked again to Dr. Denham that he's over sixty. (_Id._).

- Dr. Kurth remarked again that Dr. Denham must be getting tired. (_Id._).

- Dr. Kurth remarked again that Plaintiff think about retiring. (_Id._).

- During that same conversation, Dr. Kurth told Dr. Denham that, Defendants would no longer continue to accommodate his disability. (SOF 98-101)

- Dr. Kurth stated that solely because of his disability, Dr. Denham would have to lose his salary, bonus, benefits, paid vacation, personal expense account, faculty position, and leadership title. (_Id._).

- Despite having knowledge of Dr. Kurth's discriminatory behavior, Defendants again did nothing. (SOF 109)

- Defendants' blatant inaction facilitated Dr. Kurth's discriminatory behavior. Dr. Kurth thereafter ***threatened to terminate Plaintiff's employment*** if he did not acquiesce to Defendants' discriminatory behavior. (SOF 113-114)

- Defendants' treatment of Plaintiff exacerbated his medical conditions, necessitating that he take a medical leave of absence, on which he has remained since May 23, 2018. (SOF 116)

Based on the conduct above, it is clear that a reasonable jury could conclude that Plaintiff was subjected to a hostile work environment.

However, the analysis need not even get that far, as this is the exceedingly rare case **where Defendants' own witnesses admit that even a portion of the actions described above could constitute unlawful harassment.** CHOP's Non-Discrimination, Harassment and Retaliation policy prohibits discriminatory harassment. (SOF 40). It exists for the express purpose of ensuring that Defendants' employees are not subjected to invidious discrimination and so that the hospital remains in compliance with anti-discrimination laws. (SOF 41).

Critically, Defendants' own witnesses **admit** that Defendants could have violated this policy:

- Ms. Kraft, **admitted** that Dr. Kurth's comments to Dr. Denham – you are in your sixties, getting older, getting tired, and should think about retiring - are **offensive**. (SOF 68).

- Ms. Kraft **admitted** that Dr. Kurth's comments could be discriminatory. (SOF 69).

- Ms. Kraft **admitted** that Dr. Kurth's comments could be in violation of the Non-Discrimination Policy. (SOF 70).

- Ms. Kraft similarly **admitted** that Dr. Bailey's comments to Dr. Denham - your body has taken a number of hits and is not what it used to be - could constitute discrimination.(SOF 60).

- Ms. Kraft **admitted** that Dr. Bailey's comments could be in violation of the Non-Discrimination Policy. (SOF 61).

13

- Dr. Bailey similarly **admitted** that his comments to Dr. Denham could be offensive. (SOF 57).

- Dr. Bailey thus **admitted** that his comments to Dr. Denham could have violated the Non-Discrimination policy. (SOF 59).

Given that Defendants concede their treatment of Dr. Denham could have violated the very policy designed to prevent unlawful discrimination and harassment, a reasonable jury could certainly conclude that Defendants' behavior constituted a hostile work environment, such that Defendants' summary judgment motion should be denied. *See also Johnson v. Philadelphia Hous. Auth.*, 218 F. Supp. 3d 424 (E.D. Pa. 2016) (summary judgment denied where supervisor subjected Plaintiff to age related harassment, including making statements that the Plaintiff had "been on the job too long," that "maybe it was time for [the Plaintiff] to move on," referencing the Plaintiff's age in association with questions like, "Why did you even come in today?", and plaintiff got less desirable equipment and assignments); *Pulchalski v. Franklin Cty.*, 2018 U.S. Dist. LEXIS 25167 (M.D. Pa. Feb. 14, 2018) (summary judgment denied where, for months, co-workers made daily comments to Plaintiff to the effect that he was "milking his injury," seeing a "Dr. Summer-off" as a means of getting placed on light-duty, asking "[h]ow do I bid into your position," and where his termination was threatened); *Vance v. VisionQuest Nat'l, LTD*, 2013 U.S. Dist. LEXIS 107764 (W.D. Pa. Aug. 1, 2013) (summary judgment denied where employer made numerous ageist comments over a three year period, including comments that, because of his age, Plaintiff's body was "breaking down," that he was "too old to do [his job]," and that he "would need a girdle to suck in that old gut and be able to zip up [his] jacket"); *Geisel v. Primary Health Network*, 2010 U.S. Dist. LEXIS 97565 (W.D. Pa. Sep. 17, 2010) (summary judgment denied where Plaintiff was asked by supervisor if he was going to retire and told that he would be fired if he did not quit, CEO asked Plaintiff when he was going to retire, supervisor taunted

14

Plaintiff on several occasions, and Plaintiff was stripped of discretionary and supervisory duties).[3]

### C. Plaintiff Has Set Forth Sufficient Evidence From Which A Reasonable Jury Could Conclude That Defendants Failed to Provide Plaintiff A Reasonable Accommodation

Defendants denied Plaintiff a reasonable accommodation. To establish a *prima facie* claim for failure to accommodate, a plaintiff must show: (1) he has a disability; (2) the employer had notice of that disability; (3) he is able to perform the essential functions of the relevant position with reasonable accommodation; and (4) the employer failed to provide reasonable accommodation. *Johnson v. McGraw-Hill Cos.*, 451 F.Supp.2d 681, 701 (W.D. Pa. 2006). "On the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits." *Walton v. Mental Health Ass'n*, 168 F.3d 661, 670 (3d Cir. 1999). If the plaintiff satisfies his burden, then the burden shifts to defendant to prove that the proposed accommodation creates an "undue hardship" for it. 42 U.S.C. § 12112(b)(5)(A); *Turner*, 440 F.3d at 614; *Walton*, 168 F.3d at 670.

Here, Plaintiff can clearly establish a *prima facie* case of failure to accommodate. Plaintiff had worked a reduced schedule and received his associated benefits for years. (SOF 25-35). By Defendants' own admission, Plaintiff's reduced work schedule and associated benefits

---

[3] The cases relied upon by Defendants are all distinguishable from this matter. *See Ballard-Carter v. Vanguard Grp.*, 703 F. App'x 149, 152 (3d Cir. 2017) (alleging a hostile work environment based on only four comments, which at worst could be described as un-civil, including "you're supposed to be talking loudly at your desk" and "we just said you weren't' listening"); *Walton v. Mental Health Ass'n*, 1997 U.S. Dist. LEXIS 18224, at *38 (E.D. Pa. Nov. 17, 1997) (concluding that Plaintiff "failed to offer any evidence" that she was subjected to discrimination "on the basis of her disability" and recognizing that Plaintiff conceded during her deposition that she was not harassed because of her disability); *Lescoe v. Pa. Dep't of Corr. – SCI Frackville*, 464 F. App'x 50, 54 (3d Cir. 2012) (concluding that "[a]s the District Court appropriately reasoned, Appellant has failed to establish that he has a disability under the ADA."); *Hamera v. Cty. of Berks*, No. 05-2050, 2006 U.S. Dist. LEXIS 47485, at *21 (E.D. Pa. July 11, 2006) (insensitive comments where Plaintiff's work performance was never interrupted does not constitute a hostile work environment); *Hartwell v. Lifetime Doors, Inc.*, No. 05-2115, 2006 U.S. Dist. LEXIS 6026, at *55 (E.D. Pa. Feb. 16, 2006) ("plaintiff has failed to provide sufficient evidence for a reasonable jury to conclude that he was disabled"); *Street v. Steel Valley OIC*, 2008 U.S. Dist. LEXIS 17826, at *6 (W.D. Pa. Mar. 7, 2008) (only one insensitive comment made in the plaintiff's presence did not constitute a hostile work environment).

constituted a reasonable accommodation for his disability and therefore the first three prongs are met. (SOF 27). Additionally, as discussed more fully in Section IV.A., *supra*, upon the implementation of the Models in 2018, Defendants informed Plaintiff they would no longer accommodate his disability and would no longer provide him with a guaranteed salary, bonus, benefits, paid vacation, personal expense account, a faculty position, and a leadership role. Thus, a reasonable jury could and will conclude that Defendants failed to provide Plaintiff with a reasonable accommodation.

Since Plaintiff has established a *prima facie* case of failure to accommodate, the burden shifts to Defendants to prove that Plaintiff's accommodation constituted an undue hardship. §12112(b)(5)(A); *Turner*, 440 F.3d at 614; *Walton*, 168 F.3d at 670. Critically, Defendants have not and cannot argue that continuing to provide Plaintiff the reasonable accommodation that he had received for years somehow now constituted an undue hardship.[4] **As such, the analysis stops there, all of Defendants arguments are moot, and Defendants' Motion for Summary Judgment should be denied**.

Recognizing that Defendants cannot defend the indefensible, however, they instead make a series of legally and factually deficient arguments. First, Defendants argue that Plaintiff's claim fails because he did not engage in the interactive process. Second, Defendants argue that they were not required to grant Plaintiff's reasonable accommodation for forever. Third, Defendants argue that Plaintiff was entitled to a reasonable accommodation, not his preferred accommodation. Fourth, Defendants' argue that Plaintiff is not entitled to full benefits for part-time work. Each of these arguments are completely without merit as discussed more fully below.

---

[4] Importantly, undue hardship is an affirmative defense, which Defendants did not (properly) raise it in their Amended Answer. [Dkt. No. 16 at pp 9-13]; *Turner*, 440 F.3d at 614. Therefore, to the extent that Defendants tried to raise it now, they would be prohibited from doing so.

First, Defendants' assertion that Plaintiff did not engage in the interactive process is legally and factually deficient. Defendants' argument is legally deficient because it completely misconstrues the role of the interactive process.  Its purpose is for the employer and employee to work together to determine what, if any, reasonable accommodation exists for the employee. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 316 (3d Cir. 1999). Put another way, employees and employers should "engage in an interactive process to identify the employee's limitations resulting from a disability and the kinds of accommodation which would be both appropriate and feasible." *Jacoby v. Bethlehem Suburban Motor Sales*, 820 F. Supp. 2d 609, 622 (E.D. Pa. 2011) (citing 29 C.F.R. § 1630.2(o)(3)).  Here, however, the parties had already agreed upon a reasonable accommodation, which Plaintiff had been receiving for over thirteen (13) years. (SOF 27-35). Despite admitting that it was reasonable, Defendants unilaterally ended that accommodation illegally and without justification.  (SOF 80-108).Thus, the interactive process is moot and has no role in this analysis.[5]

Second, Defendants incorrectly argue that they were not required to grant Plaintiff's accommodation for forever.  Defendants' entire argument is predicated on the faulty premise that they exceeded their obligations and in doing so afforded plaintiff an accommodation that was not reasonable.[6]  However, this is directly contradicted by Defendants' own **admission**, that

---

[5] Although not relevant to this analysis, Defendants' assertion that Plaintiff did not engage in the interactive process by communicating with Defendants after the implementation of the Models is wholly factually deficient and not supported by the record.  Dr. Denham exchanged countless emails with Defendants, and discussed the models with Dr. Kurth on April 19, 2018 and on April 20, 2018.  After these discussions, Dr. Kurth and Defendants explicitly stated that they would no longer provide Plaintiff a reasonable accommodation. (SOF 98-108)

[6] For this reason, *Meyers* and *Hong* are inapposite to this matter.  In both cases, as Defendants concede, the employers exceeded their obligations under the law, by providing accommodations that were not reasonable. *Meyers v. Conshohocken Catholic Sch.*, 2004 U.S. Dist. LEXIS 26135, at *27-28 (E.D. Pa. Dec. 30, 2004) ("The defendants' past accommodations to Meyers's illnesses were beyond the scope of the ADA's requirements. The defendants were not required to accommodate Meyers's illnesses by allowing her to miss work whenever and for however long she was ill. Regular attendance was an essential function of Meyers's job and could only be performed when Meyers was in the classroom with her students. Any accommodation that excused Meyers from this requirement was unnecessary under the ADA, as  an employer need not eliminate the essential functions of a position in order to

Plaintiff's accommodation was in fact reasonable. (SOF 27). Therefore, Defendants' argument

fails.

      Furthermore, in support of their argument, Defendants rely exclusively on Penn's Faculty

Handbook, which is misguided and irrelevant.  The Handbook, by its own terms, expressly deals

with individuals who are working a reduced schedule as they phase into retirement, not those,

like Dr. Denham, who are working a reduced schedule for medical reasons.[7]  (*See* Response to

Defendants' Statement of Facts 109-112)  ("Phased Retirement is available for faculty members

who wish to move gradually from full-time employment to full retirement.") To that end, a

policy that prohibits disabled employees, without exception, from working reduced schedules as

an accommodation for more than six (6) years would undoubtedly violate the ADA, PHRA, and

PFPO. *Walton*, 168 F.3d at 670. Therefore, the Handbook and policy does not apply to Plaintiff.

[8]  Furthermore, even if the Handbook applied to Plaintiff, which it does not, Ms. Kraft admitted

that such policy provided "a fair amount of flexibility," and that there was no intent to

consistently enforce the policy without exception. (Response to Defendants' Statement of Facts

---

accommodate an employee's disability."); *Hong v. Temple Univ.*, 2000 U.S. Dist. LEXIS 7301, at *22-23 (E.D. Pa. May 30, 2000) ("It is important to also note  that both of Dr. Hong's suggested accommodations fail for an additional, common reason. Temple exceeded the ADA's requirements during the period from November 1995 to June 1997 when Dr. Hong was retained despite the fact that he was unable to perform the essential functions of his position with or without reasonable accommodations. It is unclear from the present record whether Temple did so out of benevolence, because of a pre-existing contractual duty, for a combination of both reasons, or for some other reason. In any event, the mere fact that an employer has exceeded its statutory obligations for a limited period of time does not create an obligation for it to continue to exceed those obligations indefinitely.")

[7] The Handbook states "Phased Retirement is available for faculty members who wish to move gradually from full-time employment to full retirement. During the period of phased retirement, which may extend up to six years, a faculty member's responsibilities and salary are reduced by a maximum of fifty percent.  All benefits are continued during the period of phased retirement, but those benefits linked to salary are proportionally reduced. Participation in the program requires 1. Agreement between the faculty member and the chair of the faculty member's department and 2. Agreement to move to full retirement at the end of the period of phased retirement. At the end of the period of phased retirement a faculty member who meets the requirements of FIAP may begin full retirement with the benefits of that program." (Defs.' Ex. 32 at PENN_DENHAM_382) (emphasis added).

[8]  Defendants' reliance on Penn's policy directly contradicts their contention that Plaintiff is not an employee of Penn.

110). Therefore, Defendants were required to grant Plaintiff's accommodation if it continued to be reasonable, which it always remained.

Third, Defendants argue that Plaintiff was entitled to a reasonable accommodation, not his preferred accommodation. However, Defendants' argument is without merit because it is again based on the faulty assumption that Plaintiff's accommodation was not reasonable. It is undisputed that Plaintiff's accommodation was reasonable, and Defendants have not and cannot articulate why they could not continue to provide him his accommodation. (SOF 27).

Fourth, Defendants' argument that Plaintiff was not entitled to full benefits for part-time work is without merit. Plaintiff is not seeking full benefits for part-time work. As part of his reasonable accommodation, Plaintiff's compensation was proportionally reduced. (*See e.g.* SOF 16). The only benefit to which Defendants cite is Plaintiff's Professional Expense Account. However, Defendants' argument in this regard fails for two reasons. First, under the Part Time Limited Model, Plaintiff would have received no Professional Expense Account, not a prorated account. (SOF 95). Second, even a prorated account is discriminatory. By Defendants' own admission, one's professional expenses have no correlation to the amount of time worked and thus should not be prorated. (SOF 50). This is elucidated by the fact Defendants' discriminatory reduction caused Plaintiff to incur thousands of dollars in out of pocket expenses. (SOF 52).

In sum, all of Defendants arguments are irrelevant. A reasonable jury could and will conclude that Defendants failed to provide Plaintiff with a reasonable accommodation, and Defendants' Motion for Summary Judgment should be denied.

### D.  Plaintiff Has Set Forth Sufficient Evidence From Which A Reasonable Jury Could Conclude That Penn and CHOP Are Both Plaintiff's Employers

A jury could conclude that Penn, along with CHOP, employed Plaintiff. Several facts make this clear. First, Plaintiff's Form W2 explicitly lists Penn as his employer. (Response to

Defs.' SOF at 106). Second, Dr. Kurth and Dr. Bailey, two of the physicians primarily responsible for the discriminatory conduct to which Plaintiff was subjected are also paid by Penn. (Response to Defs.' SOF at 106, 108). Third, Plaintiff was the Medical Director at CAM and primarily worked on site at Penn. (SOF 8).  Fourth, Plaintiff maintained a faculty appointment with Penn, holding the position of Assistant Professor of Clinical Anesthesiology and Critical Care. (SOF 12).  As such, a jury could certainly conclude that Penn, along with CHOP, were Plaintiff's employer and thus subjected him to the adverse actions.

### E. Plaintiff Has Set Forth Sufficient Evidence From Which A Reasonable Jury Could Conclude Plaintiff is Entitled to Liquidated and Punitive Damages

A jury could conclude that Plaintiff is entitled to liquidated and punitive damages. Liquidated damages are available to a plaintiff when they prove that Defendants "willfully" violated the ADEA. 29 U.S.C. § 626(b). The Third Circuit model jury instructions set forth the standard the jury should consider in reaching this decision:

> You must find [defendant's] violation of the ADEA to be willful if [defendant] knew or showed reckless disregard for whether the [challenged action] was prohibited by the law. To establish willfulness it is not enough to show that [defendant] acted negligently. If you find that [defendant] did not know, or knew only that the law was potentially applicable, and did not act in reckless disregard as to whether its conduct was prohibited by the law, then [defendant's] conduct was not willful.

*Third Circuit Model Jury Instructions*, 8.4.3

Similarly, punitive damages are appropriate under the ADA when the defendant acts with "malice" or "reckless indifference."  Again, the Third Circuit model jury instructions set forth the standard the jury should consider in reaching this decision:

> An award of punitive damages is permissible in this case only if you find by a preponderance of the evidence that a management official of [defendant] personally acted with  malice or reckless indifference to [plaintiff's] federally protected rights. An action is with malice if a person knows that it violates the federal law prohibiting discrimination and does it anyway. An action is with reckless indifference if taken with knowledge that it may violate the law.

*Third Circuit Model Jury Instructions*, 9.4.2.

Here, Plaintiff is entitled to liquidated and punitive damages for each of his claims. Defendants intentionally discriminated against Plaintiff.   Each of the bad actors – Dr. Kurth, Dr. Bailey, Ms. Kraft, and Ms. Otarola – knew that age and disability discrimination were unlawful and against Defendants' policies. (SOF 42). Yet, as is explained in detail above, Defendants subjected Plaintiff to invidious disability and age discrimination.  Since Defendants intentionally discriminated against Plaintiff despite knowledge of its illegality, a reasonable jury could certainly find that Plaintiff is entitled to liquidated and punitive damages. [9]  *Ramdeen v. Trihop 69th St., LLC*, No. 16-1361, 2017 U.S. Dist. LEXIS 33659, at *13 (E.D. Pa. Mar. 9, 2017) (denying summary judgment on the issue of punitive damages when the decision-maker had knowledge that discrimination is unlawful because a jury "could conclude that she was aware that her actions might be wrongful"); *Slayton v. Sneaker Villa, Inc.*, No. 15-0074, 2017 U.S. Dist. LEXIS 39327, at *35-36 (E.D. Pa. Mar. 20, 2017) (denying summary judgment on the issue of punitive damages when the alleged bad actor "testified that she was responsible for ensuring that employees at [the defendant] complied with the ADA" and there were questions as to whether she complied with the law).  As such, Defendants' Motion for Summary Judgment should be denied.

## V.  **CONCLUSION**

For the foregoing reasons, as well as the existence of disputed facts, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment and enter the proposed Order submitted herewith.

---

[9] Defendants' reliance on *Trans World Airlines v. Thurston*, 469 U.S. 111 (1985) is misguided for this reason, as the Court was not analyzing whether a defendant discriminated against an individual employee despite knowledge of its illegality.

**CONSOLE MATTIACCI LAW, LLC**

<u>/s/ Lane J. Schiff</u>
Lane J. Schiff, Esquire
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
Telephone:  (215) 545-7676
Facsimile:  (215) 405-2964
schiff@consolelaw.com

*Attorneys for Plaintiff*

Dated: May 20, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of May, 2020, I caused the foregoing Plaintiff's Opposition to Defendants' Motion for Summary Judgment with Accompanying Exhibits to be sent via electronic filing system upon counsel for Defendants below:

        Joseph H. Tucker, Esquire
        Leslie M. Greenspan, Esquire
        Tucker Law Group, LLC
        Ten Penn Center
        1801 Market Street, Suite 2500
        Philadelphia, PA 19103


        Counsel for Defendants



**CONSOLE MATTIACCI LAW, LLC**

By:    <u>/s/ Lane J. Schiff</u>
        Lane J. Schiff, Esquire
        Console Mattiacci Law LLC
        1525 Locust Street, 9th Floor
        Philadelphia, PA 19102
        215-545-7676
        215-405-2964 (fax)

        Attorney for Plaintiff, Joseph Denham