# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH DENHAM** | : | **CIVIL ACTION NO.** |
| Plaintiff, | : | **19-794** |
| v. | : | |
| **THE CHILDREN'S HOPSITAL OF PHILADELPHIA;** *ET AL.* | : | |
| Defendants. | : | |

## PLAINTIFF JOSEPH DENHAM'S PROPOSED JURY INSTRUCTIONS

Plaintiff, E. Joseph Denham ("Plaintiff"), by and through his undersigned counsel, respectfully requests that the Court use the attached proposed jury instructions in this matter. Plaintiff submits these proposed jury instructions pursuant to the Court's Eighth Scheduling Order dated July 7, 2021 (ECF 47) and the Court's Policies and Procedures.

                                              **CONSOLE MATTIACCI LAW, LLC**

Date: <u>November 16, 2021</u>       By:    <u>s/ Lane J. Schiff</u>
                                                         Lane J. Schiff, Esquire
                                                         Colin P. Saltry, Esquire
                                                         1525 Locust St., 9th Floor
                                                         Philadelphia, PA 19102
                                                         (215) 545-7676
                                                         (215) 405-2964 (facsimile)

                                                         *Attorneys for Plaintiff, Joseph Denham*

# PLAINTIFF'S PROPOSED JURY INSTRUCTIONS NO. 1
# ADA AND ADEA INTRODUTORY INSTRUCTION

In this case the Plaintiff DR. JOSEPH DENHAM makes a claim based on two federal laws known as the Americans with Disabilities Act, which will be referred to in these instructions as the ADA, and the Age Discrimination in Employment Act, which will be referred to in these instructions as the ADEA. <u>DR. DENHAM also makes claims under the Pennsylvania state and Philadelphia local laws prohibiting age and disability discrimination, which are the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO"), respectively</u>.

Under the ADA, <u>the PHRA and the PFPO</u>, an employer may not discriminate against someone because of their medical condition. Under the ADEA, <u>the PHRA, and the PFPO</u>, an employer may not discriminate against someone because of their age. ~~deprive a person with a disability of an employment opportunity because of that disability, if that person is able, with reasonable accommodation if necessary, to perform the essential functions of the job. Terms such as "disability", "qualified individual" and "reasonable accommodations" are defined by the ADA and I will instruct you on the meaning of those terms~~.

DR. DENHAM's claims under the ADA, <u>PHRA, and PFPO</u> are that Defendants CHILDREN'S HOSPITAL OF PHILADELPHIA ("CHOP") and CHILDREN'S ANESTHESIOLOGY ASSOCIATES ("DEFENDANTS") decided that he would be subject to a reduction in his compensation, or other terms, conditions, or privileges of his employment, and that DEFENDANTS decided to end the reasonable accommodation that they had previously provided.

DR. DENHAM further has claims under the ADA, ADEA, <u>PHRA, and PFPO</u>, that DEFENDANTS subjected him to a hostile work environment because of his disability and/or age.

DEFENDANTS deny DR. DENHAM'S claims. Further, DEFENDANTS assert that [describe any affirmative defenses].

As you listen to these instructions, please keep in mind that many of the terms I will use, and you will need to apply, have a special meaning under the law. So please remember to consider the specific definitions I give you, rather than using your own opinion of what these terms mean.

<u>Citation of Authority</u>

Third Circuit Model Jury Instructions No. 8.0 (modified); Third Circuit Model Jury Instructions No. 9.0 (modified)

# PLAINTIFF'S PROPOSED JURY INSTRUCTIONS NO. 2
# ELEMENTS OF AN ADA CLAIM – DISPERATE TREATMENT – MIXED MOTIVE

In this case DR. DENHAM is alleging that DEFENDANTS discriminated against him on the basis of his disability. In order for DR. DENHAM to recover on this discrimination claim against DEFENDANTS, DR. DENHAM must prove that DEFENDANTS intentionally discriminated against him. This means that DR. DENHAM must prove that his disability was a motivating factor in DEFENDANTS' decision to reduce his compensation, or other terms, conditions, or privileges of his employment.

To prevail on this claim, DR. DENHAM must prove all of the following by a preponderance of the evidence:

First: DR. DENHAM has a "disability" within the meaning of the ADA.

Second: DR. DENHAM is a "qualified individual" able to perform the essential functions of PEDIATRIC ANESTHESIOLOGIST.

Third: DR. DENHAM'S disabilities were a motivating factor in DEFENDANTS' decision to reduce his compensation or other terms, conditions, or privileges of his employment. <u>To prevail on this claim, however, Plaintiff need not prove that he actually had a reduction in his compensation or other terms, conditions, or privileges of his employment.</u>

Although DR. DENHAM must prove that DEFENDANTS acted with the intent to discriminate on the basis of a disability, DR. DENHAM is not required to prove that DEFENDANTS acted with the particular intent to violate his federal rights under the ADA.

In showing that DR. DENHAM'S disability was a motivating factor for DEFENDANTS' decision, DR. DENHAM is not required to prove that his disability was the sole motivation or even the primary motivation for DEFENDANTS' decision. DR. DENHAM need only prove that the disability played a motivating part in DEFENDANTS' decision even though other factors may also have motivated DEFENDANTS.

As used in this instruction, DR. DENHAM'S disability was a "motivating factor" if his disability played a part or played a role in DEFENDANTS' decision to reduce his compensation or other terms, conditions, or privileges of his employment.

[I will now provide you with more explicit instructions on the following statutory terms:

1. "Disability." — Instruction 9.2.1

2. "Qualified" — *See* Instruction 9.2.2 ]

<u>Citation of Authority</u>

Third Circuit Model Jury Instructions 9.1.1 (modified); Memorandum Denying Summary Judgment In Part (ECF 32, p. 9) ("an adverse action under certain circumstances may occur before the tangible effects take place"); *Del. State College v. Ricks*, 449 U.S. 250, 258 (1980)

(holding that an adverse employment action occurs at the time the employee receives notice of that action); *Lebofsky v. City of Phila.*, 394 F. App'x 935, 938 (3d Cir. 2010) (recognizing that a cause of action begins upon "notification to the employee of such an action"); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 852-53 (3d Cir. 2000) ("[A]n adverse employment action occurs…at the time the employee receives notice of that action and termination is a delayed but inevitable result")

# PLAINTIFF'S PROPOSED JURY INSTRUCTIONS NO. 3
# ELEMENTS OF AN ADA CLAIM – DISPARATE TREATMENT – PRETEXT

In this case DR. DENHAM is alleging that DEFENDANTS discriminated against him on the basis of his disability. In order for DR. DENHAM to recover on this discrimination claim against DEFENDANTS, DR. Denham must prove that DEFENDANTS intentionally discriminated against him. This means that DR. DENHAM must prove that his disability was a determinative factor in DEFENDANTS' decision to reduce his compensation, or other terms, conditions, or privileges of his employment.

To prevail on this claim, DR. DENHAM must prove all of the following by a preponderance of the evidence:

First: DR. DENHAM has a "disability" within the meaning of the ADA.

Second: DR. DENHAM is a "qualified individual" able to perform the essential functions of PEDIATRIC ANESTHESIOLOGIST.

Third: DR. DENHAM'S disability was a determinative factor in DEFENDANTS' decision to reduce his compensation or other terms, conditions, or privileges of his employment. <u>To prevail on this claim, however, Plaintiff need not prove that he actually had a reduction in his compensation or other terms, conditions, or privileges of his employment.</u>

[I will now provide you with more explicit instructions on the following statutory terms:

1. "Disability." — Instruction 9.2.1

2. "Qualified" — *See* Instruction 9.2.2 ]

Although DR. DENHAM must prove that DEFENDANTS acted with the intent to discriminate on the basis of a disability, he is not required to prove that DEFENDANTS acted with the particular intent to violate his federal rights under the ADA. Moreover, DR. DENHAM is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts.

You should weigh all the evidence received in the case in deciding whether DEFENDANTS intentionally discriminated against DR. DENHAM. [For example, you have been shown statistics in this case. Statistics are one form of evidence that you may consider when deciding whether a defendant intentionally discriminated against a plaintiff. You should evaluate statistical evidence along with all the other evidence.]

DEFENDANTS have given a nondiscriminatory reason for their decision to reduce his compensation, or other terms, conditions, or privileges of his employment. If you believe DEFENDANTS' stated reason and if you find that their decision would have occurred because of DEFENDANTS' stated reason regardless of DR. DENHAM's disability, then you must find for DEFENDANTS. If you disbelieve DEFENDANTS' stated reason for their conduct, then you may, but need not, find that DR. DENHAM has proved intentional discrimination. In determining whether DEFENDANTS' stated reason for its actions was a pretext, or excuse, for discrimination,

you may not question DEFENDANTS' business judgment. You cannot find intentional discrimination simply because you disagree with the business judgment of DEFENDANTS' or believe it is harsh or unreasonable. You are not to consider DEFENDANTS' wisdom. However, you may consider whether DR. DENHAM has proven that DEFENDANTS reason is merely a cover-up for discrimination.

Ultimately, you must decide whether DR. DENHAM has proven that his disability was a determinative factor in DEFENDANTS' decision to reduce his compensation, or other terms, conditions, or privileges of his employment. "Determinative factor" means that if not for DR. DENHAM's disability, the action would not have occurred.

Citation of Authority

Third Circuit Model Jury Instructions 9.1.2. (modified); Memorandum Denying Summary Judgment In Part (ECF 32, p. 9) ("an adverse action under certain circumstances may occur before the tangible effects take place"); *Del. State College v. Ricks*, 449 U.S. 250, 258 (1980) (holding that an adverse employment action occurs at the time the employee receives notice of that action); *Lebofsky v. City of Phila.*, 394 F. App'x 935, 938 (3d Cir. 2010) (recognizing that a cause of action begins upon "notification to the employee of such an action"); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 852-53 (3d Cir. 2000) ("[A]n adverse employment action occurs…at the time the employee receives notice of that action and termination is a delayed but inevitable result")

# PLAINTIFF'S PROPOSED JURY INSTRUCTIONS NO. 4
# ELEMENTS OF AN ADA CLAIM – REASONABLE ACCOMMODATION

In this case DR. DENHAM claims that DEFENDANTS decided to end the reasonable accommodation that they had previously provided. The ADA provides that an employer [~~may not deny employment opportunities to a qualified individual with a disability if that denial is based on the need of the employer to make reasonable accommodations to that individual's disability~~] [must make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee~~, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business~~].

To prevail on this claim, DR. DENHAM must prove all of the following by a preponderance of the evidence:

First: DR. DENHAM has a "disability" within the meaning of the ADA.

Second: DR. DENHAM is a "qualified individual" able to perform the essential functions of PEDIATRIC ANESTHESIOLOGIST with reasonable accommodation.

Third: DEFENDANTS were informed of the need for an accommodation of DR. DENHAM due to a disability. Note that there is no requirement that a request be made for a particular or specific accommodation; it is enough to satisfy this element that DEFENDANTS was informed of DR. DENHAM's basic need for an accommodation.

Fourth: Providing DR. DENHAM with the accommodation DEFENDANTS had previously agreed to provide, specifically a reduced work schedule of three-days per week and no requirement that he be on call without disproportionately reducing his compensation, terms, conditions, benefits or privileges of employment, would have been reasonable, meaning that the costs of that accommodation would not have clearly exceeded its benefits.

Fifth: DEFENDANTS decided to revoke this accommodation. <u>To prevail on this claim, however, Plaintiff need not prove that the revocation of his reasonable accommodation had already taken effect.</u>

[I will now provide you with more explicit instructions on the following statutory terms:

1. "Disability." — *See* Instruction 9.2.1

2. "Qualified" — *See* Instruction 9.2.2 ]

In general, an accommodation is a change in the work environment or in the way things are customarily done that enables an individual with a disability to enjoy equal employment opportunities. In the context of this case, this means accommodations that enable the employer's employees with disabilities to perform the essential functions of the position held or desired; and/or accommodations that enable the employer's employees with disabilities to enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities. ~~Examples of such~~

~~reasonable accommodations include, but are not limited to, the following:~~

Citation of Authority

Third Circuit Model Jury Instructions 9.1.3. (modified); Memorandum Denying Summary Judgment In Part (ECF 32, p. 9) ("an adverse action under certain circumstances may occur before the tangible effects take place"); *Del. State College v. Ricks*, 449 U.S. 250, 258 (1980) (holding that an adverse employment action occurs at the time the employee receives notice of that action); *Lebofsky v. City of Phila.*, 394 F. App'x 935, 938 (3d Cir. 2010) (recognizing that a cause of action begins upon *"notification to the employee of such an action"*); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 852-53 (3d Cir. 2000) ("[A]n adverse employment action occurs…at the time the employee receives notice of that action and termination is a delayed but inevitable result")

# PLAINTIFF'S PROPOSED JURY INSTRUCTIONS NO. 5
## ELEMENTS OF AN ADA/ADEA CLAIM – HARASSMENT – HOSTILE WORK ENVIRONMENT – NON-TANGIBLE EMPLOYMENT ACTION

DR. DENHAM claims that he was subjected to harassment by DEFENDANTS, that this harassment was motivated by DR. DENHAM's disability and/or age.

DEFENDANTS are liable for the actions of DR. KURTH and DR. BAILEY in plaintiff's claim of harassment if DR. DENHAM proves all of the following elements by a preponderance of the evidence:

First: DR. DENHAM has a "disability" within the meaning of the ADA;

Second: DR. DENHAM is a "qualified individual" within the meaning of the ADA;

Third: DR. DENHAM was subjected to disability and/or age based biased comments and/or actions by employees of DEFENDANTS.

Fourth: the conduct was not welcomed by DR. DENHAM.

Fifth: the conduct was motivated by the fact that DR. DENHAM has a "disability," as defined by the ADA, sought an accommodation for that disability, or by Plaintiff's age.

Sixth: The conduct was so severe or pervasive that a reasonable person in DR. DENHAM's position would find DR. DENHAM's work environment to be hostile or abusive. This element requires you to look at the evidence from the point of view of the reaction of a reasonable person with DR. DENHAM's disability to DR. DENHAM's work environment.

Seventh: DR. DEHNAM believed his work environment to be hostile or abusive as a result the conduct.

Citation of Authority

Third Circuit Model Jury Instructions 9.1.5 (modified); 8.1.3 (modified)

9

# PLAINTIFF'S PROPOSED JURY INSTRUCTIONS NO. 6
# ADA DEFINITIONS – DISABILITY

Under the ADA, the term "disability" [means] [~~includes~~] a physical or mental impairment that "substantially limits" a "major life activity." **[[Option One:]** I will now define some of these terms in more detail.][1] **[[Option Two:]** ~~Thus, a person has a disability if they actually have a physical or mental impairment that substantially limits a major life activity. But a person also has a disability if they have a "record of" disability, or if they are "regarded as" having a disability. I am about to tell you more about [each of] [both of] these ways of showing a disability.]~~ I remind you to consider the specific definitions I give you. You are not to use your own opinions as to what these terms mean.

["Physical/Mental Impairment"

The term "physical impairment" means any condition that prevents the body from functioning normally. ~~The term "mental impairment" means any condition that prevents the mind from functioning normally.~~ *[Note that this simplified definition may be under-inclusive compared with the definition supplied by the relevant regulation; see the Comment for suggestions on tailoring this paragraph in a given case.]*]

[Major Life Activities

Under the ADA, the term "disability" includes a [physical/~~mental~~] impairment that substantially limits a major life activity. [Major life activities include the operation of major bodily functions.][2] I instruct you that <u>major life activities include, without imitation, [caring for oneself, standing, performing manual tasks, lifting, bending, and working]</u> ~~is a major life activity within the meaning of the ADA.~~]

["Substantially Limiting"

As I mentioned, to be a disability, a physical ~~or mental~~ impairment must substantially limit DR. DENHAM's ability to perform a major life activity as compared to most people in the general population.

[[For use when there is no jury question as to whether the impairment substantially limits a major life activity:] I instruct you that DR. DENHAM's [name of condition – e.g., cancer] is a disability because it limits the major life activity of [name of major life activity – e.g., normal cell growth].]

[[For use when there is a jury question as to whether the impairment substantially limits a major life activity:] So long as an impairment substantially limits one major life activity of DR. DENHAM, it is a disability even if it does not substantially limit any other of DR. DENHAM's

---

[1] Use Option One if the plaintiff is relying only on the "actual disability" prong of the definition of disability.

[2] This bracketed sentence should be omitted if the major life activity at issue is not a major bodily function. See the Comment for discussion of the statutory definition of "major life activities."

major life activities. An impairment need not prevent, or significantly or severely restrict, DR. DENHAM from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment is a disability; you should compare DR. DENHAM's performance of the major life activity to the performance of the same major life activity by most people in the general population.

[You should make this comparison without regard to the ameliorative effects of mitigating measures ~~such as [list relevant mitigating measures; see Comment for discussion].~~ ~~[But you must consider the ameliorative effects of ordinary eyeglasses or contact lenses. In other words, if [plaintiff's] visual impairment does not substantially limit any major life activity once you consider [plaintiff's] use of ordinary eyeglasses or contact lenses, then [plaintiff's] visual impairment is not a disability.]]~~

In determining whether DR. DENHAM is substantially limited in a major life activity, you may find it helpful to consider, as compared to most people in the general population, the condition under which DR. DENHAM performs the major life activity; the manner in which DR. DENHAM performs the major life activity; and/or the duration of time it takes DR. DENHAM to perform the major life activity, or for which DR. DENHAM can perform the major life activity. In thinking about these factors, you might consider, among other things [list any of the following that are warranted by the evidence:]

- the difficulty, effort, or time required to perform a major life activity; and
- pain experienced when performing a major life activity;

~~[You should focus on whether the impairment substantially limits a major life activity, rather than on what outcomes DR. DENHAM can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population.]~~

**Concluding Instruction:**

Please keep in mind that the definition of "disability" is to be construed in favor of broad coverage of individuals. The primary question for you to decide is whether DEFENDANTS have complied with their obligations under the ADA.

<u>Citation of Authority</u>

Third Circuit Model Jury Instructions 9.2.1. (modified)

# PLAINTIFF'S PROPOSED JURY INSTRUCTIONS NO. 7
# ADA DEFINITIONS – QUALIFIED INDIVIDUAL

Under the ADA, DR. DENHAM must establish that he was a "qualified individual". This means that DR. DENHAM must prove two elements:

First, that he had the skill, experience, education, and other job-related requirements for the PEDIATRIC ANESTHESIOLOGIST position,[3] and

Second, that, <u>prior to May 23, 2018,</u> he could do the job's "essential functions", either with or without a reduced work schedule of three-days per week and no requirement that he be on call.

If DR. DENHAM cannot prove both elements, then DR. DENHAM is not a qualified individual under the ADA. If DR. DENHAM is not a qualified individual within the meaning of the ADA, you must return a verdict for DEFENDANTS <u>on DR. DENHAM'S DISABILITY DISCRIMINATION CLAIMS</u>, even if the reason DR. DENHAM is not qualified is solely as a result of his disability. The ADA does not require an employer to hire or retain an individual who cannot perform the job with or without an accommodation.

In this case, DR. DENHAM claims that he was able to perform the essential functions of PEDIATRIC ANESTHESIOLOGIST with a reduced work schedule of three-days per week and no requirement that he be on call. DEFENDANTS contend that DR. DENHAM was unable to perform [describe function(s)] and that [this/these] function(s) were essential to the PEDIATRIC ANESTHESIOLOGIST position. It is DR. DENHAM's burden to prove by a preponderance of the evidence that he was able to perform the essential functions of a PEDIATRIC ANESTHESIOLOGIST. If DR. DENHAM could not perform [describe function] then it is DR. DENHAM's burden to show that [describe function], that this was not essential to the PEDIATRIC ANETHESIOLOGIST position.

In determining whether DR. DENHAM could perform the essential functions of his job as a PEDIATRIC ANESTHESIOLOGIST, you should keep in mind that not all job functions are "essential." The term "essential functions" does not include the marginal functions of the position. Essential functions are a job's fundamental duties. In deciding whether [describe function] is essential to the PEDIATRIC ANESTHESIOLOGIST position, some factors you may consider include the following:

● whether the performance of the [describe function] is the reason that the PEDIATRIC ANESTHESIOLOGIST position exists;

● whether there are a limited number of employees available to do the [describe function];

● whether [describe function] is highly specialized so that the person in the position is hired

---

[3] As discussed in the Comment, this element is derived from the applicable regulation, and the regulation appears to present this element as one that is not modified by the "with or without reasonable accommodation" concept that modifies the second element.

for his or her expertise or ability to perform the particular function;

● DEFENDANTS' judgment about which functions are essential to the PEDIATRIC ANESTHESIOLOGIST position;

● written job descriptions prepared before advertising or interviewing applicants for the PEDIATRIC ANESTHESIOLOGIST position;

● the amount of time spent on the job performing [describe function];

● the consequences of not requiring DR. DENHAM to [describe function];

● the terms of a collective bargaining agreement;

● whether others who held the position of PEDIATRIC ANESTHESIOLOGIST performed [describe function];

● whether those holding similar jobs also [describe function];

● [*list any other factors supported by the evidence*.]

No one factor is necessarily controlling. You should consider all of the evidence in deciding whether [describe function] is essential to the PEDIATRIC ANESTHESIOLOGIST position.

In assessing whether DR. DENHAM was qualified to perform the essential functions of his job as a PEDIATRIC ANETHESIOLOGIST you should consider DR. DENHAM's abilities as they existed at the time when [DR. DENHAM contends DEFENDANTS decided that he would be subject to a reduction in his compensation, or other terms, conditions, or privileges of his employment, and/or when that DEFENDANTS decided to end the reasonable accommodation that they had previously provided and/or when Defendants subjected him to a hostile work environment].


Citation of Authority

Third Circuit Model Jury Instructions 9.2.2 (modified).

# PLAINTIFF'S PROPOSED JURY INSTRUCTIONS NO. 8
# ADA DAMAGES – COMPENSATORY DAMAGES – GENERAL INSTRUCTION

I am now going to instruct you on damages. Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not DEFENDANTS should be held liable.

If you find by a preponderance of the evidence that DEFENDANTS violated DR. DENHAM's rights under the law by [discriminating against him because of his age and/or disability], then you must consider the issue of compensatory damages. You must award DR. DENHAM an amount that will fairly compensate him for any injury he actually sustained as a result of DEFENDANTS' conduct. The damages that you award must be fair compensation, no more and no less. The award of compensatory damages is meant to put DR. DENHAM in the position he would have occupied if the discrimination had not occurred. DR. DENHAM has the burden of proving damages by a preponderance of the evidence.

DR. DENHAM must show that the injury would not have occurred without DEFENDANTS' act [or omission]. Plaintiff must also show that DEFENDANTS' act [or omission] played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of DEFENDANTS' act [or omission]. This test — a substantial part in bringing about the injury — is to be distinguished from the test you must employ in determining whether DEFENDANTS' actions [or omissions] were motivated by discrimination. In other words, even assuming that DEFENDANTS' actions [or omissions] were motivated by discrimination, DR. DENHAM is not entitled to damages for an injury unless CHOP's discriminatory actions actually played a substantial part in bringing about that injury.

[There can be more than one cause of an injury. To find that DEFENDANTS' act [or omission] caused DR. DENHAM's injury, you need not find that DEFENDANTS' act [or omission] was the nearest cause, either in time or space. However, if DR. DENHAM's injury was caused by a later, independent event that intervened between DEFENDANTS' act [or omission] and DR. DENHAM's injury, DEFENDANTS are not liable unless the injury was reasonably foreseeable by DEFENDANTS.]

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork.

You may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that DR. DENHAM experienced as a consequence of DEFENDANTS' [allegedly unlawful act or omission]. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

I instruct you that in awarding compensatory damages, you are not to award damages for the amount of wages that DR. DENHAM would have earned, either in the past or in the future, if

he had continued in employment with DEFENDANTS. These elements of recovery of wages that DR. DENHAM would have received from DEFENDANTS are called "back pay" and "front pay" and Dr. Denham is not seeking this type of damage. ~~Under the applicable law, the determination of "back pay" and "front pay" is for the court.]~~

~~You may award damages for monetary losses that DR. DENHAM may suffer in the future as a result of CHOP's [allegedly unlawful act or omission]. [For example, you may award damages for loss of earnings resulting from any harm to [plaintiff's] reputation that was suffered as a result of [defendant's] [allegedly unlawful act or omission]. Where a victim of discrimination has been terminated by an employer, and has sued that employer for discrimination, [he/she] may find it more difficult to be employed in the future, or may have to take a job that pays less than if the act of discrimination had not occurred. That element of damages is distinct from the amount of wages [plaintiff] would have earned in the future from [defendant] if [he/she] had retained the job.]~~

As I instructed you previously, DR. DENHAM has the burden of proving damages by a preponderance of the evidence. But the law does not require that DR. DENHAM prove the amount of his losses with mathematical precision; it requires only as much definiteness and accuracy as circumstances permit.

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

<u>Citation of Authority</u>

Third Circuit Model Jury Instructions 9.4.1 (modified)

# PLAINTIFF'S PROPOSED JURY INSTRUCTIONS NO. 9
## ADA & ADEA DAMAGES – NOMINAL DAMAGES

If you return a verdict for DR. DENHAM, but DR. DENHAM has failed to prove actual injury and therefore is not entitled to damages, then you must award nominal damages of $ 1.00.

A person whose federal rights were violated is entitled to a recognition of that violation, even if [he] suffered no compensable injury. Nominal damages (of $1.00) are designed to acknowledge the deprivation of a federal right, even where no compensable injury occurred.

However, if you find compensable injury, you must award damages ~~for lost wages or benefits~~ (as I instructed you), rather than nominal damages.

Citation of Authority

Third Circuit Model Jury Instructions 8.4.5; 9.4.5.

# CERTIFICATE OF SERVICE

I, Lane J. Schiff, Esquire, hereby certify that on the date set forth below, I sent the foregoing, via ECF, upon counsel for Defendant:

Joe H. Tucker, Esquire
Leslie Miller Greenspan, Esquire
1801 Market Street, Suite 2500
Philadelphia, PA 19103
Attorneys for the CHOP Defendants

**CONSOLE MATTIACCI LAW LLC**

By: _/s/ Lane J. Schiff_
Lane J. Schiff, Esquire
Colin P. Saltry, Esquire
1525 Locust Street, 9th Floor
Philadelphia, PA 19102

Dated: November 16, 2021